**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:18-cr-158-SI-01 |
| v. | **OPINION AND ORDER** |
| **FRANCISCO ALVAREZ**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

On April 15, 2020, Defendant Fancisco Alvarez ("Mr. Alvarez") petitioned the warden of the Federal Correctional Institution at Lompoc, California ("FCI Lompoc") for compassionate release. His petition was denied on May 4, 2020. On May 12, 2020, Mr. Alvarez filed in this Court a Motion for Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF 108. The Government opposes Mr. Alvarez's motion on the merits. For the reasons that follow, the Court DENIES Mr. Alvarez's motion for release.

**LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE**

**A.  Modifying a Term of Imprisonment for Compassionate Release**

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010).

Congress, however, has expressly authorized a district court to modify a defendant's sentence in three limited circumstances: (1) when granting a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A); (2) when expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; or (3) when a defendant has been sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(1). The motion before the Court seeks compassionate release.

Before 2018, § 3582(c)(1)(A) required that a motion for compassionate release could be brought only by the Bureau of Prisons ("BOP"). The First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), amended § 3582 to authorize courts to grant a motion for compassionate release filed by a defendant. A defendant, however, may only bring a motion for compassionate release *after*: (1) petitioning the BOP to make such a motion on the defendant's behalf; *and* (2) either (a) the defendant has exhausted all administrative appeals after the BOP denied the defendant's petition or (b) thirty days has elapsed after the warden of the defendant's facility received the defendant's petition, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).[1]

Compassionate release under § 3582(c)(1)(A) authorizes a court to modify a defendant's term of imprisonment if the court finds that two conditions have been satisfied. The first is that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The second is that "such a reduction is consistent with applicable policy statements issued by the

---

[1] On June 2, 2020, the United States Court of Appeals for the Sixth Circuit held that a defendant's failure to satisfy this administrative exhaustion requirement does not deprive a court of subject-matter jurisdiction; instead, this is a mandatory claim-processing rule that binds the courts when properly asserted by the Government and not forfeited. *United States v. Alam*, --- F.3d ---, 2020 WL 2845694 (6th Cir. June 2, 2020). The Ninth Circuit has not yet addressed this issue.

Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The court also must *consider* the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id.*

**B.  Extraordinary and Compelling Reasons**

The Sentencing Commission policy statement for reducing a term of imprisonment under § 3582(c)(1)(A) is found in the United States Sentencing Guidelines Manual ("USSG") at § 1B1.13. That policy statement explains the phrase "extraordinary and compelling reasons." USSG § 1B1.13(1)(A) and cmt. 1. According to the policy statement, extraordinary and compelling reasons are: (1) the medical condition of the defendant (defined as whether the defendant is suffering from a terminal illness; or is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); (2) the age of the defendant (defined as whether the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less); (3) family circumstances (defined as the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner); and (4) any other extraordinary and compelling reason determined by the Director of the BOP. USSG § 1B1.13 cmt. 1.

We are currently in a global health crisis caused by the 2019 novel Coronavirus ("COVID-19"), which already has taken the lives of more than 110,000 people just in the United States during the past several months. When a defendant has a chronic medical condition that may substantially elevate the defendant's risk of becoming seriously ill or dying from

COVID-19, that condition may satisfy the standard of extraordinary and compelling reasons. Under these circumstances, a chronic medical condition (*i.e.*, one from which a defendant is not expected to recover) reasonably may be found to be both serious and capable of substantially diminishing the ability of the defendant to provide self-care within the environment of a correctional facility, even if that condition would not have constituted an extraordinary and compelling reason absent the heightened risk of COVID-19. *See generally* USSG § 1B1.13 and cmt. 1(A)(ii)(I).

Alternatively, USSG § 1B1.13, as currently written, does not constrain the Court's ability to find extraordinary and compelling reasons here. Because the Sentencing Commission's policy statement was not amended after enactment of the First Step Act, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" . . . "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (citing *Brown v. United States*, 411 F. Supp. 3d 447, 499 (canvassing district court decisions)) (quotation marked omitted); *see also United States v. Redd*, 2020 WL 1248493, at *6. (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for the purposes of satisfying the ["FSA's] 'consistency' requirement, an 'applicable policy statement.'"); *United States v. Barber*, 2020 WL 2404679, at *3 (D. Or. May 12, 2020) ("The Court is persuaded by the reasoning of numerous other district courts and holds that it is not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.") (citations and quotation marks omitted).

As explained by one court, "a majority of federal district courts have found that the most natural reading of the amended § 3582(c) and [28 U.S.C.] § 994(t) is that the district court

assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Perez*, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020). Indeed, the Government previously conceded this point in *United States v. Young*, agreeing that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). The court in *Young* followed many other district courts in recognizing that § 1B1.13's defined categories are not exclusive: "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *Id*. The Court agrees with this alternative analysis as well.

**C.  Safety of Other Persons and the Community**

The policy statement further provides that, in addition to finding extraordinary and compelling reasons, a court also must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). The factors to be considered in deciding whether a defendant is a danger to the safety of any other person or to the community are: (1) the nature and circumstances of the offense (including whether the offense is a crime of violence, a violation of 18 U.S.C. § 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device); (2) the weight of the evidence; (3) the history and characteristics of the defendant (including, among other things, the defendant's character, physical and mental condition, and family ties and whether at the time of the offense or arrest the defendant was on probation, parole, or other release); and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

**D. Sentencing Factors Under § 3553(a)**

Finally, as provided in both § 3582(c)(1)(A) and the policy statement, a court must

consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. These

factors include the nature and circumstances of the offense; the history and characteristics of the

defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect

for the law, provide just punishment, afford adequate deterrence, protect the public, and provide

the defendant with needed training, medical care, or other treatment in the most effective

manner. 18 U.S.C. § 3553(a). The policy statement also recognizes that the sentencing court "is

in a unique position to determine whether the circumstances warrant a reduction . . ., after

considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy

statement[.]" USSG § 1B1.13 cmt. 4.

## DISCUSSION

Mr. Alvarez pleaded guilty to one count of conspiracy to possess with intent to distribute

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. For purposes of

his advisory sentencing guidelines range, Mr. Alavarez agreed that his relevant conduct involved

more than 5 kilograms of actual methamphetamine. According to the Government, Mr. Alvarez

is a high-volume drug trafficker, who supervised the distribution of dozens of kilograms of

methamphetamine into the Portland area for years. He has four prior drug convictions and

previously had been sentenced to 140 months in federal prison for drug trafficking. While in

federal prison, Mr. Alvarez had someone smuggle methamphetamine and heroin into the prison

in which Mr. Alvarez was serving his sentence. After being released in November 2014,

Mr. Alvarez located a new source of supply from contacts in Mexico and then distributed large

quantities of methamphetamine for several years, all while serving two terms of supervised

release.

On June 3, 2019, the Court sentenced Mr. Alvarez to a term of imprisonment of 188 months, followed by five years of supervised release. He has been in federal custody since October 4, 2017. The BOP classified Mr. Alvarez as a low-security inmate and designated him to serve his sentence at FCI Lompoc, which is part of the Lompoc Federal Correctional Complex ("FCC Lompoc"). His scheduled release date is February 9, 2031. He has served less than 20 percent of his sentence.

Mr. Alvarez currently is 50 years old and in poor health. In 1992, he was diagnosed as having Hepatitis C. As of the date of his sentencing, Mr. Alvarez also has Type 2 Diabetes, high blood pressure, and high cholesterol. He also has chronic liver disease and asthma and is severely obese.

There is no dispute that we are in a global health crisis and pandemic. The CDC warns that "[p]eople 65 years and older" are "at high-risk for severe illness from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (lasted visited June 4, 2020). In addition, the CDC explains that people of all ages with certain underlying medical conditions, particularly if not well controlled, also are at high-risk for severe illness from COVID-19. According to the CDC, these underlying medical conditions are:

- People with chronic lung disease or moderate to severe asthma[.]
- People who have serious heart conditions[.]
- People who are immunocompromised[.]
  * * *
- People with *severe obesity* (body mass index [BMI] of 40 or higher)[.]
- People with *diabetes*[.]
- People with chronic kidney disease undergoing dialysis[.]
- People with *liver disease*[.]

*Id.* (emphasis added). Mr. Alvarez's Diabetes, liver disease, and severe obesity place him in the CDC's category of persons at "high risk for severe illness from COVID-19."

FCI Lompoc appears to be the most severely affected BOP facility in the United States.
As of June 8, 2020, the BOP reports that at that facility 893 inmates have recovered from
COVID-19, two inmates have died from COVID-19, and one inmate currently is testing positive.
*See* https://www.bop.gov/coronavirus/ (last visited June 8, 2020).[2] The BOP further reports
that 11 staff members at FCI Lompoc have recovered from COVID-19, no staff members have
died, and seven staff members currently are testing positive. *Id*. FCI Lompoc currently holds 999
inmates.

Mr. Alvarez seeks compassionate release to this custody of his wife "on whatever
conditions this Court sees fit to impose." ECF 108 at 8. The Government opposes Mr. Alvarez's
motion on the merits. The Government argues that Mr. Alvarez "has already had COVID-19 and
has recovered." ECF 113 at 1. The Government notes that after Mr. Alvarez became infected and
tested positive for COVID-19 on May 5, 2020, the BOP moved him from FCI Lompoc to the
United States Penitentiary within FCC Lompoc for medical treatment and isolation. The
Government notes that despite his underlying health conditions, which include Type 2 Diabetes,
Hepatitis C, and severe obesity, Mr. Alvarez has recovered without serious medical
consequences and his recent vital signs are stable.

---

[2] The BOP's information is of limited value. The BOP does not disclose whether or to
what extent a facility is testing symptomatic or asymptomatic inmates, both or neither. In *United
States v. Pabon*, 2020 WL 2112265, at *5 (E.D. Pa. May 4, 2020), the court cited Johns Hopkins
Bloomberg School of Public Health Professor Leonard Rubenstein to explain the link between
testing and limiting the spread of COVID-19: "Unless you do universal testing in all
environments, the risk of spread is enormous. If you are waiting for symptoms to emerge before
you do the testing, you are getting a false picture of what is going on . . . It's too late." *Id*. (citing
Kevin Johnson, Mass Virus Testing in State Prisons Reveals Hidden Asymptomatic Infections;
Feds Join Effort, USA TODAY (Apr. 25, 2020, updated Apr. 27, 2020),
https://www.usatoday.com/story/news/politics/2020/04/25/coronavirus-testing-prisons-
revealshidden-asymptomatic-infections/3003307001/) (last visited June 2, 2020); *see also Arias
v. Decker*, 2020 WL 2306565, at *8 (S.D.N.Y. May 8, 2020) ("[W]hen it comes to vulnerable
detainees . . ., monitoring them for signs of infection is too little, too late.").

The Government further argues that Mr. Alvarez he has served less than 20 percent of his sentence and that his release would present a danger to the community. *Id*. The Government adds that Mr. Alvarez was arrested on September 12, 2017 and initially charged in Oregon state court. After he was released on bail, Mr. Alvarez immediately fled to Idaho and failed to appear in court. The U.S. Marshals arrested Mr. Alvarez in Idaho on October 4, 2017, where they found him living in a trailer, which he had purchased using drug proceeds. He also had in his possession a social security card and a permanent resident card, both in a false name.

Compassionate release is "rare" and "extraordinary," and courts routinely deny such claims. *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release . . . is an extraordinary and rare event.") (citation omitted). A defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release. *See United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that a defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)). As other district courts have noted: "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy) (brackets in original) (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019)). The Court also must consider the sentencing factors under § 3553(a), to the extent they are applicable. *See* § 3582(c)(1)(A) and USSG § 1B1.13.

The Court has considered all the relevant factors for compassionate release. Based on Mr. Alvarez's current health condition (including the fact that he has recovered from COVID-19), the fact that Mr. Alvarez has served less than 20 percent of his sentence, and his criminal history, the Court concludes that Mr. Alvarez has not shown special circumstances that meet the high bar set by Congress and the Sentencing Commission for compassionate release.

## CONCLUSION

The Court DENIES Defendant's Motion for Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF 108).

**IT IS SO ORDERED.**

DATED this 8th day of June, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge